# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON D. BODLE, | : | Civil No. 3:17-CV-2265 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| BARRY SMITH, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Petitioner Leon D. Bodle ("Bodle" or "Petitioner") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his Court of Common Pleas of Lycoming County, Pennsylvania state–court convictions and sentence for multiple sex offenses involving minors and his designation as a sexually violent predator.[1]  (Doc. 1.)  Respondents argue that most of Bodle's claims are procedurally defaulted without excuse, fail to state a cognizable habeas claim, or are meritless.  (Doc. 17.)  For the reasons that follow, the court will deny the petition and a certificate of appealability will not issue.

---

[1] The court takes judicial notice of the docket sheet in *Commonwealth v. Bodle*, CP–41–CR–0000743–2009, available through Pennsylvania's Unified Judicial Docket System docket research at:  http://ujsportal.pacourts.us/ (last visited Feb. 1, 2021).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.      Bodle's Trial**[2]

The facts underlying Bodle's conviction are set forth in the Pennsylvania Superior Court's July 29, 2011 Memorandum Opinion affirming his judgment of conviction:

> The police began investigating [Bodle] when the parents of an eleven year old girl informed them that [Bodle], who had been the girl's substitute teacher in the past, began sending her instant messages that the parents believed were inappropriate.  No charges were filed against [Bodle] stemming from his contact with this eleven year old girl, however, the police spoke to other female students and former students of [Bodle] about his interactions with them.  The police also interviewed [Bodle] and seized two computers that he used.  On the computers, the police discovered numerous images of child pornography.  As a result of the investigation by the police, the Commonwealth filed an Information charging [Bodle] with solicitation of involuntary deviate sexual intercourse with a child less than 16 years old, unlawful communication with a minor, two counts of disseminating explicit sexual materials to a minor, twenty seven counts of sexual abuse of children related to possession of child pornography, four counts of criminal use of

_____

[2] The following background information is taken from the portions of trial testimony and other official proceedings appearing in the record.  These facts largely mirror the facts provided by the trial court, which were adopted by the Pennsylvania Superior Court.  *See Commonwealth v. Bodle*, 32 A.3d 286 (Pa. Super. 2011) (unpublished op.), *appeal denied*, 65 A.3d 412 (Pa. 2013); Doc. 17–2, pp. 1–6; *see also* Doc. 17–2, pp. 7–24.  No information in this section is meant to contradict any finding of fact made by the trial court or the PCRA court.  Rather, any additional information provided beyond the state courts' findings of fact is meant only to supplement those facts where necessary to address matters presented in the instant petition.  If any state court finding of fact is called into question, it will be explicitly noted, and the appropriate standard of review will be applied.

> communications facility, and six counts of corruption of a
> minor.

*Commonwealth v. Bodle*, 32 A.3d 286 (Pa. Super. 2011), *appeal denied*, 65 A.3d

412 (Pa. 2013); *see also* Doc. 17–2, pp. 1–24.[3]

A jury trial was held from March 2 to 4, 2010, at which time Attorney James

R. Protasio represented Bodle.  (Doc. 1, p. 12.)  During the trial, the

Commonwealth called Pennsylvania State Police ("PSP") Trooper Thomas Trusal

("Tpr. Trusal"), of the PSP's Bureau of Criminal Investigations Computer Crime

Unit, as an expert in computer forensics.  (Doc. 17–3, p. 19.)  His direct testimony

explained the processes he used to clone Bodle's hard drive and then extract

pictures, and remnants of deleted or hidden filed from Bodle's personal computer.

(*Id*., p. 20.)  He also testified as to the three instant messaging programs discovered

on the hard drive:  MySpace, Instant Messenger, and Yahoo Messenger.  (*Id*., p.

21.)  At least one of these programs, Yahoo Messenger, was set to automatically

run when the computer was turned on.  (*Id*., p. 22.)  Evidence revealed during his

testimony included that someone using the computer's MySpace platform searched

for two user names:  J.P. and P.A., two of the minors involved in the criminal

investigation.  A file sharing program, LimeWire, and associated file names,

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

labeled in a manner "consistent on how child pornography files" are often found, were also discovered on the hard drive.  (*Id*., p. 24.)  Tpr. Trusal managed to pull "out the list of users and user profiles … on the computer and some information about when the software was installed, what the log in were and the type of information."  (*Id*., p. 25.)  Tens of thousands of pictures were found on Bodle's hard drive.  (*Id*., p. 27.)

Attorney Protasio's cross examination of Tpr. Trusal highlighted his inability to "tell [the jury] who did [what] search" on Bodle's computer or confirm "who actually would have tried to download" files from LimeWire or other websites.  (*Id*.)  Tpr. Trusal admitted he was unable to determine "how many people had access" to the computer, or whether a virus or malware had infected or "hijacked" Bodle's computer.  (*Id*., pp. 26–27.)  Tpr. Trusal acknowledged that "Trojan Horse" malware could allow others to "take control of [a] computer" without the user's knowledge.  (*Id*., p. 27.)  Tpr. Trusal testified he had no data associated with the pictures uncovered on Bodle's hard drive relating to who placed the file on the drive, or the date the files were downloaded.  (*Id*., pp. 27–28.)  Likewise, Tpr. Trusal was unable to identify who searched the MySpace site for J.P. or P.A., or when the search was performed.  (*Id*.)

On the third and final day of trial, a court administrator advised the court that First Assistant District Attorney ("DA") Kenneth Osokow, who had observed portions of Bodle's trial, was now sitting as a juror in a civil matter and would be in "the same room as the jurors in this case."  (Doc. 17–4, pp. 1–2.)  The trial judge discussed the issue with the parties outside the presence of the jury.  The court noted that "Mr. Osokow was not identified as a member of the District Attorney's Office, nor was he identified through any other method, nor was there any conversation or contact while the Jury was in the courtroom between Mr. Osokow and Ms. Kilgus," the prosecutor in Bodle's case.  (*Id*., p. 3.)

After discussion with Bodle, Attorney Protasio declined the trial court's invitation to *voir dire* the jury on the issue of Mr. Osokow's possible influence on the jury due to concerns that it would perhaps "highlight" the matter.  He did, however, request a mistrial due to "the potential of prejudice."  (*Id*., pp. 4–5.)  Attorney Protasio  noted "[a]ll of this could have been avoided," because DA Osokow should not have entered Bodle's trial in the presence of the jury when he knew he would be appearing as a juror in a civil matter, and thus sharing the jury lounge with jurors in Bodle's trial.  (*Id*., pp. 5–6.)  The Commonwealth countered that unless Attorney Protasio "has some other evidence that any Jury member was even spoken to, we don't think it rises to a level of a mistrial."  (*Id*., p. 7.)  After

the court took a recess to research the issue, the court returned and denied Bodle's

request for a mistrial without prejudice.  (*Id.*, p. 8.)

The trial court stated:

> While I'm not at all happy as to what happened, and I
> agree that it can and should have been avoided, I don't see
> anything on the Jury's part that shows that they're not
> diligently and properly abiding by their civic duty and oath
> that they took.  Nothing has been reported that they
> behaved in any improper contact of any kind.  It's my
> understanding this morning when the second Jury came in
> that Mr. Osokow was seated in the back, had no contact
> with any of the jurors.  That was reported to me by the
> [tipstaff].
>
> Mr. Protasio, having said that, if you wish to *voir dire* or,
> for lack of a better word, call any of the [tipstaff] to testify
> and cross–examine them with respect to that, you certainly
> have the right to do so.
>
> But in general there's nothing that appears to me to show
> that they've been improperly influenced or that there has
> been any prejudice.  Mr. Osokow did come in on a few
> occasions during the trial.  He had no contact with the
> District Attorney, Ms. Kilgus, who is trying the case.
> While there may have been contact at some point outside
> of the courtroom, or outside the presence of the Jury it was
> in the courtroom from what [ ] I observed.
> …
>
> [Mr. Osokow] was never identified as a member or the
> District Attorney's Office when he came into the
> courtroom.

(*Id.*, pp. 8–11.)

Attorney Protasio noted for the record that "it would be very difficult to prove that there was any actual harm done, it's always the appearance of impropriety." (*Id.*, p. 10.)  He also noted that DA Osokow may have been in the same jury pool as members of Bodle's jury.  The court noted that DA Osokow was selected on the first day of jury selection, before Bodle's jury panel came in. (*Id.*, p. 11.)  Additionally, during jury selection in Bodle's trial, potential jurors were asked if they knew DA Osokow, and no one indicated they knew him. (*Id.*)  The court found Bodle's right to a fair trial had not been compromised by DA Osokow's presence in the courtroom or Jury lounge. (*Id.*)

At the end of trial, the jury found Bodle guilty of criminal solicitation to commit involuntary deviate sexual intercourse, unlawful communication with a minor, two counts of disseminating explicit sexual materials to a minor, twenty-four counts of sexual abuse of children related to the possession of child pornography, four counts of criminal use of communications facility, and five counts of corruption of a minor. (Doc. 17–1, pp. 32–37; Doc. 17–3, p. 32.)  The trial court ordered an assessment of Bodle in accordance with Megan's Law by Pennsylvania Sexual Offenders Assessment Board ("SOAB") at the conclusion of trial. (Doc. 17–3, p. 32.)  After receiving SOAB's assessment, the District

Attorney's Office, filed a praecipe seeking a hearing to determine whether Bodle was a Sexually Violent Predator ("SVP").

On June 29, 2010, the trial court held a hearing to determine whether Bodle should be deemed an SVP as defined by Pennsylvania's Megan's Law, 42 PA. CONS. STAT. ANN. § 9795.1, *et seq.* The Commonwealth offered the testimony of C. Townsend Velkoff, a licensed psychologist and SOAB member since 1996, who was qualified without objection, as an expert in assessing SVPs. (Doc. 17–3, pp. 33–35.) Velkoff defined an SVP as an individual who has a mental abnormality or personality disorder that would make him more likely to engage in sexually aggressive or predatory behavior. He testified that his SVP assessment included an interview of Bodle, police reports, and review of all the various file materials provided by the Board. (*Id.*, p. 35.) Based on this information Velkoff opined Bodle met SOAB's characteristics of an SVP. He opined that Bodle fell within the diagnostic category of "paraphilia NOS," as "an individual whose displaying sexual interest in adolescent and early prepubescent females. Non–consenting females." (*Id.*, pp. 36–37.) He reached this conclusion by noting that Bodle's online activity involved befriending females between the ages of 11 and 17 in his role as a teacher and "interacting with them casually developing trust and then inserting and including sexual innuendos and sexual comments and questions

8

[Velkoff] determined to be the intention of which that he was interested in forming a sexual relationship with those adolescent females." (*Id*., p. 37.)  In addition, Velkoff testified that the behavior occurred over more than a six–month period. (*Id*.)  Attorney Protasio, who had the opportunity to see Velkoff's report, did not object to it.  (*Id*., p. 38.)

Following the hearing, the court sentenced Bodle to an aggregate term of 10 to 20 years' imprisonment followed by a period of 10 years of probation.  (Doc. 17–1, p. 36.)

### B.     Bodle's Direct Appeal

On August 11, 2010, Bodle, with the assistance of Attorney Protasio, filed a petition for leave to file an appeal *nunc pro tunc*.  It was granted the same day and Bodle filed a Notice of Appeal to the Pennsylvania Superior Court.  (Doc. 18.) The trial court issued its opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925 on January 25, 2011.  (Doc. 17–2, pp. 7–24.)

Bodle raised the following twelve issues on appeal.

1.   The Court erred in denying the Suppression Motion filed in this case.

2.   The Court erred in allowing Commonwealth's exhibit No. 71 to be submitted to the jury where the exhibit was altered by the prosecutor prior to its being sent out.

3.  The verdicts of guilty on the charges of Sexual Abuse of Children were against the weight of the evidence in that the Commonwealth failed to show that [Bodle] knowingly or intentionally possessed the pictures.

4.  The evidence at trial was insufficient to sustain the verdicts of guilty on the charges of Sexual Abuse of Children in that the Commonwealth failed to show that [Bodle] knowingly or intentionally possessed the pictures.

5.  The verdicts of guilty on the charges of Sexual Abuse of Children were against the weight of the evidence in that the Commonwealth failed to show that the pictures were not altered or that the children were not suffering from delayed puberty.

6.  The evidence at trial was insufficient to sustain the verdicts of guilty on the charges of Sexual Abuse of Children in that the Commonwealth failed to show that the pictures were not altered or that the children were not suffering from delayed puberty.

7.  The prosecution committed prosecutorial misconduct when in its opening remarks the prosecutor referred to [Bodle] as a predator, thereby giving a personal belief as to the guilt of [Bodle].  Trial counsel was ineffective for failing to object to the remark and thus preserve the issue.

8.  The Court erred in denying the mistrial where the jury saw the First Assistant District Attorney in the courtroom where that person had been called for jury duty and had been in the Juror's Lounge with the jurors.

9.  The evidence at trial was insufficient to sustain the verdicts of guilty on the charges of Corruption of

Minors, Count 41, where the testimony showed that [Bodle] talked about pets and other harmless topics with the victim.

10. The verdict of guilty on the charge of Corruption of Minors, Count 41, was against the weight of the evidence in that the testimony showed that [Bodle] talked about pets and other harmless topics with the victim.

11. The Court erred in allowing the Commonwealth to play a portion of the taped statement of [Bodle] when a witness, Devon Bodle, was testifying. The playing of the portion of the statement highlighting that portion could be taken out of context.

12. The Court erred in finding that [Bodle] was a sexually violent predator in that:

a.   There was no evidence that [Bodle] was ever violent or had any violent propensities and [Bodle] did not engage in any violent behavior toward any of the victims.

b. To the extent that the statute allows the Court to find a person to be a sexually violent predator based solely on the charges against him, [Bodle] contends that the statute is unconstitutional and deprives him of his right under Due Process of Equal Protection.

c.  To the extent that the statute allows the Court to find a person to be a sexually violent predator without finding that [Bodle] suffers from a mental abnormality or disorder that is recognized in the mental health paradigm, [Bodle] contends that the statute is unconstitutional and deprives him of his rights under Due Process and Equal Protection.

11

Doc. 17–2, pp. 2–4.

On July 29, 2011, the Superior Court affirmed Bodle's judgment. *See Commonwealth v. Bodle*, No. 1315 MDA 2010 (Pa. Super. Ct. Jul. 29, 2011) (non–precedential); Doc. 17–2, pp. 1–5. On May 29, 2012, after appointing Bodle new counsel, the trial court reinstated Bodle's rights to file a petition for allowance of appeal *nunc pro tunc*. On May 20, 2013, the Supreme Court of Pennsylvania denied Bodle's petition for allowance of appeal. *Commonwealth v. Bodle*, 65 A.3d 412 (Pa. 2013); Doc. 17–2, p. 6. Bodle did not seek review in the United States Supreme Court.

### C.    Bodle's Post–Conviction Collateral Challenges

On May 29, 2013, Bodle filed a timely petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA. CONST. STAT. §§ 9541–9546. (Doc. 17–2, pp. 25–32.) With the assistance of counsel, Donald Martino, Esq., an amended PCRA petition was filed on November 9, 2013, raising the following ineffective assistance of trial counsel claims: (1) trial counsel was ineffective for failing to call character witnesses or to discuss the importance of calling character witnesses with [Bodle]; (2) trial counsel was ineffective for failing to subpoena phone records for J.E.'s home and failing to subpoena J.E.'s disciplinary records from the Sugar Valley Rural Charter School ("SVCS") ; and (3) trial counsel was

ineffective for failing to employ and utilize an expert witness that would refute the Commonwealth's evidence regarding the age of the children depicted in the images and that would analyze [Bodle's] computer to determine if the material present was related to a computer virus or spyware.  (*Id.*, pp. 42, 46, 48.)  On May 14, 2014, the PCRA court issued a notice pursuant to Pennsylvania Rule of Criminal Procedure 907 of its intent to dismiss the amended petition without a hearing.  After Bodle failed to respond, the PCRA court formally dismissed the petition on June 24, 2014.

Bodle filed a timely notice to the Pennsylvania Superior Court.  (Doc. 17–3, p. 2.)  On February 8, 2015, the PCRA court filed an opinion.  (Doc. 17–2, pp. 52–78.)  On March 24, 2015, the Superior Court vacated the PCRA court's June 24, 2014 order, and remanded the matter back to the PCRA court to hold an evidentiary hearing to address the following issues:

> 1. The [PCRA] court erred by denying [Bodle's] request for an evidentiary hearing on the issue of trial counsel's ineffective assistance in failing to call character witnesses [Ronald Weigle and Karen Bodle] and in failing to discuss the importance of calling character witnesses with [Bodle] and by failing to grant [Bodle] a new trial due to counsel's error.

> 2.  The [PCRA] court erred by denying [Bodle's] request for an evidentiary hearing on the issue of trial counsel's ineffective assistance in failing to subpoena phone records from Commonwealth witness J.E.'s home to demonstrate

> [Bodle] did not call her, for failing to subpoena
> disciplinary records for witness J.E. from the Sugar Valley
> Charter School and by failing to grant [Bodle] a trial due
> to trial counsel's failure.

*Commonwealth v. Bodle*, 120 A.3d 1062 (Pa. Super. 2015) (non–precedential)

(unpublished memorandum); (Doc. 17–3, p. 3).

On July 6 and 7, 2015, the PCRA court held an evidentiary hearing

addressing the two remanded claims.[4]   Five witnesses testified at the hearing:

Bodle, Logan Coney, the CEO of SVCS, Attorney Protasio, and the two proposed

character witnesses – Karen Bodle (Bodle's mother) and Ronald Weigle (Bodle's

uncle).  (Doc. 17–3, pp. 54–80.)

The PCRA court issued a memorandum order on February 18, 2016,

denying Bodle's amended PCRA petition.  (Doc. 17–4, pp. 38–49.)  On March 2,

2016, Bodle filed a timely notice of appeal to the Superior Court.  (*Id.*, p. 65.)

After Bodle filed a statement of matters complained of on appeal, the PCRA court

issued an opinion.  (Doc. 17–2, pp. 52–63; Doc. 17–4, p. 67.)  On February 8,

2017, the Superior Court affirmed the denial of Bodle's amended PCRA petition.

*Commonwealth v. Bodle*, No. 354 MDA 2016, 2017 WL 529523 (Pa. Super. Feb.

---

[4] Only the transcript from the first day of Bodle's PCRA hearing has been submitted for the
court's review.  *See* Doc. 17–3, pp. 54–80.

8, 2017) (non–precedential); Doc. 17–2, pp. 64–78.  The Superior Court addressed the following issues:

> 1. [Whether] the [PCRA] court erred by failing to grant [Bodle] a new trial due to trial counsel's failure to call character witnesses [Ronald Weigle and Karen Bodle] on Bodle's behalf and to emphasize the importance of calling character witnesses with [Bodle].
>
> 2.  [Whether] the [PCRA] court erred by failing to grant [Bodle] a new trial due to trial counsel's failure to subpoena phone records from Commonwealth witness J.E.'s home to demonstrate [Bodle] did not call her and for failing to subpoena disciplinary records for witness J.E. from the Sugar Valley Char[ter] School.

Doc. 17–2, p. 67.  The Pennsylvania Supreme Court denied Bodle's petition for allowance of appeal on September 8, 2017.  (Doc. 17–3, p. 18.)  Accordingly, Bodle's sentence became final on September 11, 2017.

**D.    Bodle's Federal Habeas Proceedings**

On December 4, 2017, Bodle timely filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  Bodle identifies the following grounds for relief:

> Ground I - Ineffective Assistance of Trial Counsel Claims:
>
> 1.    Counsel failed to give Bodle copies of pre–trial, trial, and post-trial decisions.

2.   Counsel failed to investigate Bodle's claims of others used his home computer or move to suppress information from computer on this basis.

3.   Counsel failed to "take advantage" of Tpr. Trusal's admissions that he failed to "thoroughly analyze" Bodle's computer with respect to firewalls, viruses, programs not password protected which could explain the presence of child pornography on the home computer.

4.   Counsel failed to argue that Bodle's MySpace account did not contain communications with his accusers.

5.   Counsel failed to obtain medical, psychological, computer or audio recording experts as Bodle requested to counter the Commonwealth's witnesses and evidence.

6.   a. Counsel failed to investigate and obtain SVCS records detailing "ongoing issues" between Bodle and A.G., and that the accusers "were not only classmates, but friends."

b. Counsel failed to obtain J.E.'s phone records or school records as "Petitioner is aware that he had written up J.E. in a couple of incidents that showed questionable credibility and those should be on her record."

c. Counsel failed to obtain class rosters of his study hall which would attack A.S.'s credibility that Bodle projected pornography on the wall during his study hall.

d. Counsel failed to interview SVCS maintenance workers on the issue of boiler room key access to

16

impeach E.E.'s allegations of Bodle's offer to serve as a lookout while she and her boyfriend had sex in the boiler room, or threats made against E.E. during her police interrogation, or that Tpr. Trusal's failure to uncover conversations between him and EE on his computer.

e.  Counsel's failure to question Tpr. Trusal why no conversations between him and A.M. were found on his computer.

f.  Counsel failed to question Tpr. Trusal why no conversations between him and A.G. and C.P. were found on the computer.  This would enhance Bodle's argument that the printout of alleged internet conversations, presented by A.G. and C.P., was fabricated.

g.  Counsel failed "to have accusers A.G., C.P., A.M., and E.E.'s computers forensically analyzed for alleged conversations" they said occurred, but they deleted.

h.  Counsel failed to question J.P. about the fact Bodle was a friend of J.P.'s family, or that she asked him to help her assemble a modeling portfolio, or that she used of his home computer, or gave Bodle photographs of herself in Karen Bodle's presence.

i.  Counsel failed to question J.P.'s sibling about the conversation discovered by Tpr. Trusal on his home computer which would confirm Bodle's statement that he argued with J.P.'s family due to J.P.'s "experimenting with 'wet' marijuana."

j. Counsel failed to obtain school records of J.P.'s sibling demonstrating that she was expelled for drug use and that "Petitioner then began homeschooling

Ruby while attempting to shield JP from the drug use."

k. Counsel's failure to interview identified SVCS employees "because they had knowledge of the accuser['s] behavior credibility issues at the school" as well as knew the accusers outside of school.

l. Counsel's failure to call Karen Bodle and Ronald Weigle as character witnesses.

7. Counsel failed to move to suppress police summaries of interviews conducted with accusers or cross–examine Detective Kriner or Officer Samar regarding their lack of proper protocols for interviewing juvenile sex crime victims.

8. Counsel's failure to hire digital audio expert to determine audio tape of Bodle's police interrogation, and alleged admissions, was the product of coercive police tactics and threats which were deleted from the recording.

9. Counsel failed to seek dismissal of Count 41, corruption of morals, as the trial court noted it "would have dismissed" the charge had counsel requested.

10. Counsel failed to be present, as requested by Bodle, at his SOAB interview.

11. Counsel failed to be present, as requested by Bodle, at his Pennsylvania Board of Probation and Parole pre-sentence investigation interview.

12. Counsel failed to provide Bodle with copies of the presentence investigative report, or the SOAB report.

18

13. Counsel failed to object to ADA Kilgus' prejudicial opening and closing statements referring to Bodle as a "predator" and that the victims included kids from the Montoursville area.

Ground II – The Commonwealth of Pennsylvania's SVP Determination was erroneous as Bodle has no history of violence and the determination was based on an unchallengeable criterion "Not Otherwise Specified"

Ground III – Trial Counsel failed to seek a mistrial based on DA Osokow's presence in the courtroom and Jury Lounge with Bodle's jury.

In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), the court issued a notice to Bodle that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeals, or withdraw his petition and file one all–inclusive § 2254 petition within the one–year statutory period prescribed by the Antiterrorism Effective Death Penalty Act ("AEDPA"). (Doc. 4.)  On February 18, 2018, Bodle returned the notice of election form, indicating that he wished to proceed with his petition for writ of habeas corpus as filed.  (Doc. 5.)  A show cause order was issued on January 14, 2019.  (Doc. 6.)  On May 6, 2019, the District Attorney of Lycoming County, Kenneth Osokow,

filed a response to the petition.  (Docs. 17–18.)  Bodle filed a traverse on May 31,
2019.  (Doc. 19.)  This matter is ripe for disposition.

## JURISDICTION

As Bodle is presently in state custody based on his Court of Common Pleas
of Lycoming County, Pennsylvania, conviction, the court has jurisdiction in this
matter pursuant to 28 U.S.C. § 2254(a), which authorizes federal district courts to
issue habeas corpus relief for individuals incarcerated pursuant to a judgment of
state court only if the petitioner is "in custody in violation of the Constitution or
the laws or treaties of the United States."  *See* 28 U.S.C. § 2254(a); *Preiser v.
Rodriguez*, 411 U.S. 475, 498–99 (1973); *Velazquez v. Sup't Fayette SCI*, 937 F.3d
151, 158 (3d Cir. 2019).

## STANDARD OF REVIEW

When reviewing the constitutionality of a state prisoner's conviction and
sentence under 28 U.S.C. § 2254, federal habeas courts "are guided by rules
designed to ensure that state–court judgments are accorded the finality and respect
necessary to preserve the integrity of legal proceedings within our system of
federalism."  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
specifies that the standard of review applicable to a particular claim depends on

how the claim was resolved by the state courts. *Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011). Where the habeas petitioner's claim was adjudicated on the merits in state court, a federal court's review is limited to determining whether the state court's rejection of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or whether the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); *see also Breakiron*, 642 F.3d at 131. This is the "highly deferential standard for evaluating state–court rulings, which demands the state–court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). When addressing such claims, the factual issues determined by a state court are presumed to be correct, rebuttable only by clear and convincing evidence. *See Johnson v. Sup't Fayette SCI*, 949 F.3d 791, 795 n. 2 (3d Cir. 2020) (citation omitted); *see also* 28 U.S.C. § 2254(e)(1) ("A determination of a factual issue made by a State court shall be presumed to be correct."). It is not enough to show that the state court incorrectly or erroneously applied clearly established federal law, the petitioner must demonstrate that the state court's resolution of the claims "objectively unreasonable." *Virginia v. LeBlanc*, 137 S.Ct. 1726, 1728 (2017). To obtain

habeas relief under § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quoting *Harrington*, 562 U.S. at 103); *see also Tyson v. Sup't Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020).

With respect to 28 U.S.C. § 2254(d)(2), which dictates that federal habeas relief may be granted when the state court adjudication was based on an unreasonable determination of the evidence, the petitioner must demonstrate that a reasonable fact–finder could not have reached the same conclusions given the state court record. *Rosen v. Sup't Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020). The state court's determination cannot be deemed unreasonable merely because a reviewing court might have reached a different conclusion in the first instance. *Burt v. Titlow*, 571 U.S. 12, 20 (2013). Importantly, the evidence against which a federal habeas court measures the reasonableness of the state court's factual findings is the evidence of the state–court record at the time of the state court's decision. *Cullen*, 563 U.S. at 185. Thus, if a reasonable basis existed for the factual finding reached in the state courts, then habeas relief is not warranted.

22

Where a state court does not address a claim on the merits, the deferential standards of the AEDPA do not apply. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *see also Williams v. Taylor*, 529 U.S. 362, 393–98 (2000) ("[A] federal court will be unconstrained by § 2254(d)(1) because the state–court decision falls within that provision's 'contrary to' clause."). Reviewing federal habeas courts examine the claim *de novo* without deference to the state court's legal conclusions, but still apply § 2254(e)(1)'s mandate as to the presumed correctness of the state court's factual determinations unless rebutted by clear and convincing evidence. *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (internal citation and quotations omitted); *see also Bey v. Sup't Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017) (holding that if a state court's reasoning does not satisfy § 2254(d)'s requirements, or petitioner overcomes the procedural default of a claim, the federal habeas court's standard of review of such a claim is *de novo*).

## DISCUSSION

Although Bodle raises three primary claims, many of his claims are multifaceted and amount to more than twenty claims. (Doc. 1.) Respondents argue that Bodle's claims are either procedurally defaulted, non–cognizable in habeas, or meritless. (Doc. 17.) Due to the extensive number of claims presented in Bodle's petition, the court will address related claims as a group.

## A.    Procedurally Defaulted Claims

### 1.    Applicable Legal Standards Guiding Federal Habeas Review of Procedurally Defaulted Claims

Before a federal court can consider the merits of a habeas claim, a petitioner must comply with the exhaustion requirements of 28 U.S.C. § 2254(b), which require a petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.[5] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Exhaustion requires the petitioner to present to the state courts the same factual and legal theory supporting each claim in a manner that puts them on notice that a federal claim is being asserted.  *Spanier v. Dir. Dauphin Cnty. Prob. Servs.*, 981 F.3d 213, 222 (3d Cir. 2020) (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).  If a petitioner has the right under state law to raise, by any available procedure, the question presented, but fails to do so, then he will not be deemed to have exhausted his available state court remedies.  28 U.S.C. § 2254(c).

---

[5] In Pennsylvania, pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the County Common Pleas Court and then the Pennsylvania Superior Court either on direct of post–conviction appeal, are considered exhausted for the purposes of federal habeas relief.  *See In re: Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases*, No. 218, Judicial Administrative Docket No. 1 (May 5, 2000) (*per curiam*); *see also Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004).

Absent a showing of "cause" and "prejudice," the procedural default doctrine precludes federal courts from reaching the merits of a state petitioner's claim when: (1) a state court decision is based on a violation of state procedural law that is independent of the federal question and is adequate to support the judgement; or (2) the claim was not presented to the state courts and it is clear that the court to which petitioner would be required to present his claim would find it procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Whitney v. Horn*, 280 F.3d 240, 250–253 (2002). To establish "cause," the petitioner must "show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The requisite showing of "prejudice" must be something that "worked to [petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*. at 494.

Alternatively, a petitioner may overcome default by demonstrating that the federal habeas court's failure to review a claim would result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298 (1995). Also known as the "actual innocence" exception, a petitioner must present new reliable evidence, not previously available at trial, that persuades the court that "no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable

doubt." *Howell v. Sup't Albion SCI*, 978 F.3d 54, 59 (3d Cir. 2020) (quoting *Satterfield v. Dist. Att'y of Phila.,* 872 F.3d 152, 163 (3d Cir. 2017)).

Traditionally, the performance of PCRA counsel could not be used to establish cause and prejudice to excuse the procedural default of a claim. *Coleman*, 501 U.S. at 753–54 (only the constitutionally ineffective assistance of counsel constitutes cause). However, in *Martinez*, 566 U.S. at 9, the Supreme Court held that "[i]nadequate assistance of counsel at initial–review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." To successfully invoke the *Martinez* exception, a petitioner must argue and establish: (1) that the underlying ineffective assistance of trial counsel claim is "substantial," meaning it has "some merit," *Workman v. Sup't SCI Albion*, 915 F.3d 928, 937 (3d Cir. 2019); and (2) that PCRA counsel was "ineffective" within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984) for failing to raise the claim. *See Preston v. Sup't Graterford SCI*, 902 F.3d 365, 376 (3d Cir. 2018); *see also Workman*, 915 F.3d at 937–38.

To establish a viable ineffectiveness of counsel claim, a petitioner must satisfy both prongs of the familiar *Strickland* standard by demonstrating that: (1) his trial counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.  *Tyson*, 976 F.3d at

391–396 (quoting *Strickland*, 466 U.S. at 687, 694).  If a petitioner's claim fails on

one *Strickland* prong, the court need not examine the other.  *See Mathias v. Sup't*

*Frackville SCI,* 876 F.3d 462, 477 (3d Cir. 2018).  The *Strickland* standard is

broadly deferential to the strategic and tactical decisions of trial counsel, making

them "virtually unchallengeable."  *Strickland,* 466 U.S. at 689–90.  Trial counsel's

tactical decision, therefore, will not provide the basis for an ineffectiveness finding

unless counsel's decisions were not reasonably designed to serve the defendant's

best interest.  *Werts v. Vaughn*, 228 F.3d 178, 190 (3d Cir. 2000) (citing *Strickland*,

466 U.S. at 690–91).

To show deficient performance, "the defendant must show that counsel's

representation fell below an objective standard of reasonableness … under

prevailing professional norms."  *Strickland*, 466 U.S. 687–88.  To demonstrate

prejudice, the defendant must show that counsel's deficient performance "actually

had an adverse effect on the defense."  *Id*. at 693.  "It is not enough for the

defendant to show that the errors had some conceivable effect on the outcome of

the proceeding.  Virtually every act or omission of counsel would meet that test,

and not every error that conceivably could have influenced the outcome

undermines the reliability of the result of the proceeding."  *Id.* (internal citations

omitted.)  In assessing prejudice, the federal habeas court "must consider the totality of the evidence before the judge or jury." *United States v. Travillion*, 759 F.3d 281, 290 (3d Cir. 2014) (quoting *Strickland,* 466 U.S. at 695).  The petitioner must show there was a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id*. at 697.

### 2. Bodle's Procedurally Defaulted Ineffective Assistance of Counsel Claims

The following ineffective assistance of counsel claims were not raised in Bodle's direct appeal or PCRA appeal in the state system and thus are procedurally defaulted: 1 through 5, 6a, 6c–6k, 6m, and 7 through 13.[6]  *See* Doc. 18, pp. 6–8; Doc. 17–2, pp. 1–5, and 7–24; Doc. 17–4, p. 19; and Doc. 17–2, p. 67.  Bodle's first opportunity to raise ineffective assistance of trial counsel claims was in his PCRA proceedings.  Therefore, the identified habeas claims that were not fairly presented to the state court for review are not exhausted.  As Bodle is no longer

---

[6] For ease of reference, the court identifies and references each claim in the same manner as presented by Bodle in his petition.

able to raise these claims before the state court, either by means of direct or collateral appeal, they are subject to procedural default.   Accordingly, the court cannot review the merits of these claims absent a showing of cause and prejudice, miscarriage of justice, or PCRA counsel's ineffectiveness.

In Claim 1, Bodle argues all prior counsel were ineffective for failing to provide him with a copy of this trial transcript and other documents, thus violating his Due Process and Equal Protection rights.  (Doc. 1, p. 15.)  Respondents contend this claim was never presented to the state court for consideration.[7]

The record reveals the Bodle was represented by the same attorney at trial and on direct appeal, Attorney Protasio.  Bodle claims that as an indigent criminal defendant, he has an absolute right to trial transcripts on direct appeal.  *Griffin v. Illinois*, 351 U.S. 12 (1956).  The court has reviewed the amended PCRA petition, and Bodle's superior court appellate brief challenging the denial of PCRA relief. (Doc. 17–2, pp. 38–51, Doc. 17–4, pp. 13–36.)  Bodle did not raise this claim in his PCRA proceedings, which was his first opportunity to bring this claim.  Bodle neither disputes Respondents' argument that this claim is procedurally defaulted nor addresses the cause of his failure to exhaust this claim.

---

[7] To the extent Bodle seeks to set forth a stand-alone claim challenging the performance of PCRA counsel, such a claim is expressly prohibited as a ground for relief by the habeas statute. *See* 28 U.S.C. § 2254(i).  Therefore, the claim is not cognizable.

To be fair, the court construes Bodle's claim that PCRA counsel's failure to raise the ineffectiveness of trial counsel's failure to provide him with transcripts as "cause" under *Martinez* for his procedural default of this claim.  Nonetheless, this claim fails because it lacks constitutional merit.  On direct appeal, an indigent criminal defendant has an absolute right to a free copy of the trial transcript, or an alternative device that fulfills the same function.  *Griffin,* 351 U.S. at 18–20.  Access to the record by direct appeal counsel is often seen as a reasonable accommodation of this right.  The record before the court confirms Bodle was represented by counsel at trial, on direct appeal, and throughout his PCRA proceedings, and counsel had access to the transcript.  (Doc. 17–2, p. 39.)

Bodle has not demonstrated that he was precluded from raising any trial error by direct appeal or post–conviction challenge by reason of his failure to have his own copy of the transcript and documents as they were available to his counsel.  Thus, there is no *Griffin* violation.  Moreover, to the extent he argues he needed a personal copy of his complete record to prepare his federal habeas petition, an applicant seeking relief under 28 U.S.C. § 2254 must first demonstrate his claim is not frivolous and that a transcript is needed to decide the issue before the court before a free transcript is provided.  *United States v. Serrano,*  562 F. App'x 95 (3d Cir. 2014).  The court finds the record adequate to address Bodle's claims, and

therefore, no supplementation is necessary.  Because Bodle has failed to meet his *Martinez* burden under *Strickland*, and he has not established that the ineffective assistance of trial counsel in failing to provide him with a copy of his trial record is substantial, he cannot avoid the procedural default of this claim.

Claims 2 through 4 address trial counsel's failure to present claims related to who had access to his computer, social media accounts, or alternative theories as to how pornography could have been downloaded to Bodle's computer.  Also included is counsel's alleged failure to exploit Tpr. Trusal's failure to examine Bodle's computer for issues related to firewalls, viruses, and other forms of malware, or why Bodle's MySpace account did not contain communications with his accusers.  Respondents note that while these issues were presented at trial, Bodle did not pursue them on direct appeal or his PCRA proceedings, and therefore, they are procedurally defaulted.  (Doc. 17, pp. 5, 10.)  Bodle does not offer any explanation for his procedural default of this claims but continues to argue their merits.  (Doc. 19, pp. 5–7.)

The court cannot evaluate the merits of these claims unless and until the issue of their exhaustion is resolved.  Bodle has not argued that there is any cause or prejudice to excuse his procedural default.  As such, Bodle fails to avoid the procedural default of Claims 2 to 4.

Bodle's fifth ineffective assistance of counsel claim addresses trial counsel's failure to obtain a medical, psychological, or audio digital expert to counter the Commonwealth's witnesses and evidence.  (Doc. 1, p. 18.)  He claims that a psychologist could determine whether he had an attraction to underage minors at his SVP hearing, while a digital audio expert "would have determined that [his] audio" confession was altered, and therefore, inadmissible."  (Doc. 19, p. 7.)  He also sought medical and police experts to discuss the ages of the individuals found in photographs.

Once again, Bodle does not dispute Respondents' accurate assessment that this claim was not raised in state court either on his direct or post–conviction collateral appeal.  Bodle does not argue cause or prejudice for his failure to present this claim to the state court.  Likewise, to the extent he proffers a statement as to the importance of authentication of digital audio recordings posted on a audio forensic expert's website as to his availability to testify on such matters, this information is not new and does not demonstrate Bodle's actual innocence.  Even if an expert could obtain information from the audio tape to demonstrate that officers threatened Bodle during his questioning where he admitted there was child pornography on his computer, it does not meet *Schulp's* high standard.  Bodle does not establish a claim of actual innocence as he was questioned by the police after

his computer seized but before it was analyzed and found to contain pornography. The same is true with respect to Bodle's assertion that a psychologist could have testified as to his affinity, or lack thereof, for minor children.  This speculative assertion does not demonstrate actual innocence, especially in light of the trial witness testimony, his own statements to police, and other evidence presented at trial sufficient to support the jury's convictions.  Finally, Bodle does not argue the ineffectiveness of PCRA counsel for raising this claim.  Accordingly, Bodle has forfeited any argument that his default is excused.  Thus, the court cannot reach the merits of this ineffective assistance of counsel claim.

Bodle's sixth ineffective assistance of counsel claim consists of twelve subsections.  Respondents argue that all but claims 6b (counsel's alleged failure to obtain J.E.'s phone and school disciplinary records) and 6l (failure to call character witnesses) are procedurally defaulted without excuse.  (Doc. 1, pp. 18–24, Doc. 17, p. 5.)  Again, Bodle does not respond to Respondents' argument about procedural default, and his discussion of excuse for his procedural default of these claims is limited to the isolated statement that his "PCRA Counsel failed the Petitioner by 'cherry picking' which claims to present to the PCRA Court for ineffective assistance of counsel." (Doc. 19, p. 9.)  Bodle's simple and unsupported assertion of PCRA counsel's ineffective assistance for "cherry picking" claims is

insufficient to excuse his procedural default of these claims pursuant to *Martinez*.
He fails to establish that the underlying ineffective assistance of trial counsel
claims are "substantial," and that his PCRA counsel was ineffective for raising
them.  Bodle is required to do more than toss out the notion of ineffective
assistance of PCRA counsel to move these claims across the procedural default
goal line.  Bodle's procedural default of all subsections of claim 6, except for 6b
and 6l, are unexcused.

Next, Respondents assert Claims 7–13[8] have never previously been raised in
state court and are procedurally defaulted.  (Doc. 17, p. 5.)  In his reply, Bodle
does not dispute this assertion.  Instead, he restates that these claims, and their
legal merit, "are self–explanatory."  (Doc. 19, p. 10.)  As noted above, the court
cannot evaluate the merits of procedurally defaulted claims unless petitioner
satisfies either the "cause and prejudice" or "actual innocence" exception.  Thus,
Claims 7–13 are deemed procedurally defaulted without excuse.

---

[8] These claims assert trial counsel's failure to move to suppress police interviews with the
victims due to their lack of "proper protocols" when interviewing juvenile victims of sex crimes;
failure to obtain a digital audio expert to determine if his alleged confessions were the result of
coercive police tactics; failure to seek dismissal of the corruption of morals charge after the trial
court on direct appeal indicated it "would have dismissed" the charge had counsel requested;
counsel's failure to attend Bodle's SOAB interview and pre–sentence investigation ("PSI")
interview; failure to provide Bodle copies of his PSI or SOAB report or review the reports with
him; and counsel's failure to object to the prosecution's reference to Bodle as a "predator" of
children from the Montoursville area.  *See* Doc. 1, pp. 24–26.

**B.      Bodle's Challenge to his SVP Determination fails to
state a Cognizable Habeas Claim**.

Bodle claims he did not fit into any of the "15 point 'checklist' of criteria'"

used by SOAB to evaluate his SVP status and thus the trial court erred when

finding he was an SVP.  He unsuccessfully raised this issue on direct appeal.

(Doc. 17–2, p. 4, 22–24.)  Bodle augments his direct appeal claim to assert that his

character and reputation are negatively impacted by his designation as an SVP and

he has no history of violence.  (Doc. 1, p. 27.)  Respondents assert that Bodle's

SVP claim challenges state law and does not assert a federal constitutional

violation, and nonetheless is without merit.  (Doc. 17, p. 13.)  The court agrees.

As set forth in his petition, Bodle's challenge to his SVP designation by the

trial court, based on Pennsylvania law, fails to state a cognizable habeas claim.  *See*

28 U.S.C. § 2254(a) (habeas relief may be granted for a person in state court

custody "only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States."); *Estelle*, 502 U.S. at 67–68 ("[I]t is not the

province of a federal habeas court to reexamine state–court determination on state–

law questions.").

The court recognizes that Bodle added a federal constitutional challenge to

his SVP designation in his reply brief.  (Doc. 19, p. 11.)  Relying on

*Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017) ("*Butler I*"), Bodle

35

argues that his SVP hearing was unconstitutional as it allowed the trial court to increase the length of his registration requirements upon a finding of "clear and convincing" evidence rather than "beyond a reasonable doubt," in violation of his state and federal constitutional rights.  He also argues that this improper method of classification violates his due process rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013).  (Doc. 19, pp. 63–66.)

This argument fails for multiple reasons.  First, Bodle cannot amend his petition via his reply.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (noting that an argument first presented in the petitioner's "traverse rather than in his habeas petition [ ] was not properly before the district court"); *see also Burns v. Att'y Gen. of the State of Pa.*, No. 14–300, 2016 WL 128212, at *8 (W.D. Pa. Jan. 12, 2006) ("A habeas petitioner cannot raise new claims in a reply (formerly known as a traverse) or in other filings made after the respondent has filed the answer.  Therefore, the only claims properly before the Court … are [those] raised in the petition.  *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("The petition must:  (1) specify *all grounds for relief* available to the petitioner; (2) state the facts supporting each ground.")(emphasis in original).  Moreover, Bodle was given the opportunity to amend his complaint

prior to the court's direction that Respondents file a response to his petition.  Bodle elected to proceed on his petition as filed.  Thus, his effort to include a new habeas claim in his reply brief is improper.  The court deems this claim waived.

Second, even if the court did consider this claim, it would be found meritless as Bodle's reliance on *Butler I* is misplaced.  Bodle is correct to note that *Butler I* held that an SVP determination required constitutional procedural safeguards and relied heavily on *Apprendi* and *Alleyne,* when it held that "it [was] unconstitutional for a legislature to remove from the jury the assessment of facts that increased the prescribed range of penalties to which a defendant is exposed" and that "such facts must be established by proof beyond a reasonable doubt."  *Butler I*, 173 A.3d at 1216–17.  Consequently, it found that *Alleyne* required that "any fact that increased the mandatory minimum sentence for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt" and that "*Apprendi*  and *Alleyne* applied to all types of punishment, not just imprisonment."  *Id*.  *Butler I* held that "since [Pennsylvania's] Supreme Court has held that SORNA registration requirements [were] punitive or a criminal penalty to which individuals are exposed, then under *Apprendi* and *Alleyne*, a factual finding … that increases the length of registration must be found beyond a reasonable doubt[.]"  *Id*.  However, on March 26, 2020, the Pennsylvania Supreme Court reviewed *Butler I* and

determined that the registration, notification, and counseling ("RNC")

requirements imposed by SORNA I[9] on SVP offenders[10] "do not constitute

criminal punishment" as it was not based upon the offender's guilt to a particular

criminal conduct or crime, but instead upon a separate finding of mental

abnormality or personality disorder. *Commonwealth v. Butler*, 226 A.3d 972, 993

(Pa. 2020) (*Butler II*). As such, the *Butler II* court concluded that the procedure for

designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the

requirements of *Apprendi* and *Alleyne* because the RNC requirements do not

constitute criminal punishment. *Butler II*, 226 A.3d at 993. In light of the above,

even if the court considered Bodle's improperly presented federal constitutional

challenge to his SVP designation, it would be denied as meritless.

## C.     Merits of Remaining Exhausted Grounds

As noted above, when the state courts have adjudicated a claim on the

merits, the federal district court employs the AEDPA's highly differential standard

_____

[9] The acronym "SORNA" refers to Pennsylvania's Sex Offender Registration and Notification Act.

[10] Following the Pennsylvania Supreme Court's *Butler I* decision, the General Assembly, in 2018, divided SORNA into two subchapters. Subchapter I of SORNA is applicable to offenders like Bodle who committed their offenses after April 22, 1996, but prior to December 20, 2012, the effective date of SORNA. *See Commonwealth v. Muniz*, 164 A.3d 1189, 1196 (Pa. 2017); *Commonwealth v. Lacombe*, 234 A.3d 602, 605–06 (Pa. 2020) (holding "Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws.") Based on the record before the court, Bodle falls within Subchapter I of SORNA.

for evaluating the state court's ruling on the matter.  Habeas relief will not be

granted unless the state court's adjudication: (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal

law; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in state court.   28 U.S.C. § 2254(d).

The remaining identified claims are exhausted, and the court will review the merits

under this standard.

### 1.  Ineffective Assistance of Counsel Claims (6b and 6l)

Bodle advances two properly exhausted ineffective assistance of counsel

claims based on trial counsel's failure to:  (1) obtain J.E.'s phone and school

records (Claim 6b); and (2) call Karen Bodle and Ronald Weigle as character

witnesses (Claim 6l).  Bodle raised these claims in his amended PCRA petition.

The PCRA court held a hearing on the merits of these claims (Doc. 17–3, pp. 54–

80) and addressed them in their opinion denying relief.  (Doc. 17–4, pp. 38–49.)

The Superior Court affirmed the denial of Bodle's PCRA petition.  (Doc. 17–2, pp.

64–84.)  Therefore, these claims only warrant habeas relief if the Superior Court's

determination was either contrary to, or an unreasonable application of, clearly

established federal law.

The clearly established law governing ineffective assistance of counsel claims is *Strickland*.  The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  *Id.* at 685–86.  The Third Circuit Court of Appeals has held that the ineffective assistance standard applied by the Pennsylvania courts is materially similar to that articulated in *Strickland*.  *See Showers v. Beard*, 635 F.3d 625, 630 n.6 (3d Cir. 2011).  Given that the Pennsylvania state courts applied the correct standard, their opinion is not "contrary to" federal law.  *See* Doc. 17–2, pp. 64–84; *see also Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).  Thus, the only remaining issue is whether the Pennsylvania Superior Court reasonably applied the *Strickland* standard to the facts of Bodle's case as presented in the state court.

When a claim of ineffective assistance of counsel has been addressed on the merits in state court, review of the claim by a federal habeas court is significantly circumscribed as "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal citations omitted).  "When § 2254(d) applies,

the question is not whether counsel's actions were reasonable.  The question is

whether there is any reasonable argument that counsel satisfied *Strickland's*

deferential standard."  *Id.*  Thus, a federal court does not render an independent

judgment on the claim but determines whether the state court decision is contrary

to or involved an unreasonable application of the *Strickland* test.  *See* 28 U.S.C. §

2254; *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).  Lastly, when viewing a state

court's determination that a *Strickland* claim lacks merit through the lens of §

2254(d), federal habeas relief is precluded where "there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with [the

Supreme Court's] precedents."  *Harrington*, 562 U.S. at 102.

### a.  Failure to obtain J.E.'s phone and school records (Claim 6b)

Bodle contends that trial counsel was ineffective for failing to obtain and use

for impeachment purposes J.E.'s phone and school records.  He claims that J.E.'s

phone records would attack her credibility and prove he never called her.  Her

school disciplinary records would demonstrate she had a questionable reputation

for credibility at the school.  (Doc. 1, p. 20.)  These claims were raised on post-

conviction appeal, and the Superior Court affirmed.  (Doc. 17-2, p. 64–78.)

Respondents argue that "these claims are without merit for the reasons set forth by

the trial court and Superior Court" demonstrating that the state court decision was

not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts before the court.  (Doc. 17, p. 11.)

On appeal, the Superior Court set out the backdrop for its resolution of this claim as follows:

> J.E. was one of the numerous victims called by the Commonwealth to testify against [Bodle].  Specifically, J.E. testified that [Bodle] was a substitute teacher while she was in seventh grade and he telephoned her house multiple times, inquiring into her homework, inviting her to an amusement park, and asking her to go on a date.  J.E. further testified that on one of these occasions, [Bodle] invited her to his house "to hang out with him" and "have sex with him and suck his d**k and everything."

(Doc. 17–2, p, 74.)

The court then set forth that "trial counsel has a general duty to undertake reasonable investigations or make reasonable decision which render particular investigations unnecessary," and that "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests."  (Doc. 17–2, p. 74 (citing *Commonwealth v. Mitchell*, 105 A.3d 1257, 1276 (Pa. 2014) and *Commonwealth v. Hammond,* 953 A.2d 544, 558 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009)).  The Superior Court cited the following portions of Attorney Protasio's PCRA hearing testimony in its

conclusion that "the trial counsel had a reasonable strategic basis for not electing to request the records in question."  (Doc. 17–2, p. 74.)

> Trial counsel testified that could not specifically recall whether he obtained the records in question, he believed that his investigator attempted to do so but was unsuccessful.  Trial counsel further opined that, in any event, the introduction of the aforementioned telephone records into evidence very well may have been harmful to appellant's case.
>
> [Attorney Martino:] Okay.  If you had physical evidence to suggest that those phone calls were never made, that would have helped your defense?
>
> …
>
> [Trial Counsel:]  It cuts both ways.  If the phone records would have c[o]me back and substantiated what she said it would have been harmful to use.
>
> [Attorney Martino:]  Well, if you get that you don't have to turn them over, correct?
>
> [Trial Counsel:]  That's correct.  But, you know, by the same token, too, I wouldn't be able to put somebody on the stand and try and make a denial of that knowing full well that that was false.  So obviously it would have been harmful if they would come back and indicated that they had occurred.  It would have been helpful if they would have come back and indicated that no phone calls were made.
>
> [Attorney Martino:]  Okay.
>
> [Trial Counsel:]   And that would require though that [Bodle] had used a phone.  For example, his house phone.

43

Whether he made a phone call from some other place, we may not have known whether that phone was the number.

So again, that was one of the problems that we would have had is that the prosecution could have said, well, you've got numbers here; but he called from these numbers, whose numbers are they.

…

If there were phone numbers to J.E.'s residence that we couldn't account for, it could be argued that maybe he called from a pay phone or maybe somebody else's, maybe his brother's home, or that he called on a cell phone.

So, I mean, I explained I think, you know, or I would have been aware of the problem in that just having the  phone records and showing that his home phone number wasn't there didn't automatically preclude that he didn't make the calls because the Commonwealth could argue he might have used a cell phone, he might have used somebody else's phone, to make those calls.

Doc. 17–2, pp. 75–76 (citations and brackets omitted).

With respect to J.E.'s school records, the Superior Court noted that Attorney Protasio testified at the PCRA hearing that he "concluded that [they] would not be beneficial to his case."  (*Id*., p. 76.)

[Commonwealth:]   Do you recall indicating that you believed – at one point to someone that you believed you had seen or talked to people about the school records; and they did not support appellant's contention about making false reports?

44

[Trial Counsel:]   Well, I know that I discussed with appellant one of the problems we had with the school disciplinary thing was that, first of all, would explain maybe why one of the girls might have a vendetta against him and might make something up; but it was also somewhat corroborated by his own statements and also by the fact that there were computer print–outs showing that he had contact with her.  But it wouldn't explain the other girls, why they would be making up these allegations.

Additionally, my recollection was that this wasn't … a major infraction or something.  So it would be difficult, I think, to convince a jury without something else, maybe her making threats of I'll get you for this or something, that she was looking to get revenge and would be making all these stories up.

…

[Commonwealth:]   And, again, by vendetta, did you believe that it would be nitpicking or grasping at straws?

[Trial Counsel:]   Yeah, that was one of the concerns that I had.  And I explained to him that it would be perceived as nitpicking and pretty much, you know, trying to bad mouth the victim with something that isn't really relevant.

…

Any time you have a sexual–assault–type case or anything like this case where it wasn't sexual assault but there were inappropriate things towards minors you always have to walk that tight rope.

*Id.*, p. 77.

The Superior Court also took note that the Ms. Coney, the CEO of the

SVRCS testified that J.E. "was not deceitful" during her tenure at the school and

that contrary to Bodle's assertion, "there were not any disciplinary records that indicated that she made false accusations or was reported by school personnel to have acted dishonestly." *Id.*, pp. 77–78.  The Superior Court found that "trial counsel had a reasonable basis not to subpoena said records and appellant's ineffectiveness claim in this regard must fail" as "the introduction into evidence of J.E.'s telephone and school disciplinary records would not have aided appellant's defense." (*Id.*, p. 78.)  In a footnote, the Superior Court noted that Bodle "has also failed to demonstrate prejudice given that Attorney Martino did not proffer these records at the PCRA hearing." (*Id.*)

As noted above, federal law clearly established by the Supreme Court holds that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91; *see Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003) (appropriate focus is on whether investigation supporting trial decision was itself reasonable).  Bodle's argument that "[t]here is no excuse for [trial counsel] not obtaining them," Doc. 19, p. 9, is conclusory and soundly refuted by the state court decision.  The record before the state court demonstrates that trial counsel made tactical decisions reasonably designed to serve his client's best interest.  Additionally, Bodle fails to demonstrate he suffered any prejudice resulting from trial counsel's decisions.  As

the state court decision highlights, given the Commonwealth's evidence of recorded internet conversation between Bodle and young girls, Ms. Coney's testimony that J.E. was not "deceitful," Bodle's admissions as to having conversations with J.E.,  compounded with trial counsel's concern of the double edge sword of securing the phone records, the failure to secure J.E.'s school records cannot be shown to have harmed his defense.  It is noteworthy that given the opportunity to review J.E.'s school records and question Ms. Coney about J.E.'s record and reputation at school, PCRA counsel elected not to place J.E.'s disciplinary record into evidence stating "[t]here's no need."   (Doc. 17–3. P. 58.) Given the totality of the evidence in the state court record, fairminded jurists would not disagree that trial counsel has a reasonable basis to conclude that the subject records would not have aided Bodle's defense.

Based on the above, the court finds that the state court's resolution of trial counsel's failure to obtain J.E.'s phone and school records was neither contrary to nor an unreasonable application of the *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Bodle is not entitled to relief based on this claim.

### (b) Counsel's Failure to Call Karen Bodle and Ronald Weigle as Character Witnesses (Claim 6l)

Bodle claims that trial counsel was ineffective for failing to call his mother, Karen Bodle, and uncle, Ronald Weigle, as character witnesses at his trial based on their availability to testify as well as his stated desire that they testify.  (Doc. 1, p. 24.)  This claim was fully exhausted as it was presented in his amended PCRA petition, and then on appeal to the Superior Court which denied relief.  Under the doubly deferential review required by § 2254(d), the appropriate inquiry is whether the state court unreasonably concluded that the proffered testimony of Weigle and Mrs. Bodle would not have changed the outcome of Bodle's trial.

The Superior Court, citing Pennsylvania law, noted that the failure to call a witness was not *per se* ineffective assistance of counsel as such decisions usually involve trial strategy.  It also cited Pennsylvania law that allows for a criminal defendant to introduce evidence of their "good reputation in any respect which has proper relation to the subject matter of the charge at issue."  (Doc. 17–2, p. 69.) (citing *Commonwealth v. Johnson*, 27 A.3d 244, 248 (Pa. Super. 2011)). Pennsylvania law requires that:

> Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged.  The cross–examination of such witnesses by the

> Commonwealth must be limited to the same traits. Such
> evidence must relate to a period at or about the time the
> offense was committed, and must be established by
> testimony or witnesses as to the community opinion of the
> individual in question, not through specific acts or mere
> rumor.

(*Id.*) (citing *Johnson*, 27 A.3d at 248). The Superior Court concluded that for

Bodle to assert a claim that trial counsel failed to present these witnesses he needed

to demonstrate the following:

> (1) the witness existed; (2) the witness was available to
> testify for the defense; (3) counsel knew of, or should have
> known of, the existence of the witness; (4) the witness was
> willing to testify for the defense; and (5) the absence of the
> testimony of the witness was so prejudicial as to have
> denied the defendant a fair trial.

(*Id.*, p. 70) (citing *Commonwealth v. Snead*, 45 A.3d 1096, 1109 (Pa. 2012)). The

Superior Court determined from the PCRA hearing testimony that the testimony of

both Weigle and Karen Bodle was not reputation evidence, but their personal

opinions of Bodle, and one of his friends. (Doc. 17–2, p. 72.)

The Superior Court summarized trial counsel's testimony as follows:

> Trial counsel acknowledged that he discussed with
> appellant the possibility of calling Bodle and appellant's
> neighbors as possible character witnesses, but does not
> recall appellant ever mentioning Weigle. Trial counsel
> noted that he directed his investigator to contact two of
> appellant's neighbors, but elected not to call them on
> appellant's behalf because they did not say anything
> positive about appellant. Trial counsel also testified that

49

he did not think that Weigle was qualified to testify about appellant's reputation in the community because Weigle did not reside as the same neighborhood as the appellant and did not think that the people in his uncle's neighborhood would have known appellant enough to say what his character was.  Trial counsel further opined that he had a reasonable strategic basis for electing not to call Bodle as a character witness, stating as follows:

> Basically what I asked [Karen] Bodle was what was appellant's reputation in the community, you know, what did the people in the neighborhood or people who knew him, what were they saying about him.  And she basically described him as a person who was kind of a home body, didn't really have a whole lot of contact with neighbors.  And quite, frankly, she didn't know what his reputation was.
>
> My belief was that she would not have been qualified as somebody who could speak on his character because the description and the answers she gave me that the neighbors didn't have a whole lot of interaction with appellant, that he spent most of his time at home.
>
> And based on that, and also based on what the investigator had given me, I didn't believe that she would even qualify as somebody who could, you know, describe his character, other than her personal feelings.

*Id.*, pp. 71–72 (brackets omitted).

The Superior Court also relied on the PCRA court's finding that Bodle "failed to satisfy his burden of proof to show that counsel was aware or should have been aware that his uncle Ronald Weigle could testify about [his] reputation in the community for truthfulness or appropriate behavior around children."  (*Id.*,

p. 72.)  The Superior Court also agreed with the PCRA court that Bodle failed to

satisfy his burden of proof that trial counsel was ineffective for not calling his

mother as a character witness because her testimony was also "'predominantly her

personal opinion regarding her son's innocence' and not credible." (*Id*.)

Moreover, the PCRA court did not find Bodle credible in his assertion that

trial counsel specifically ignored his instructions about his character witnesses.

(*Id.*, p. 73.)  Additionally, during his PCRA testimony, trial counsel expressed

several reservations about calling Karen Bodle as a character witness because

"[s]he was kept in the dark on a lot of things." (Doc. 17–3, p. 65.)  Based on his

interviews with her, "[s]he didn't know [Bodle] had made a statement [to the

police] at all until [he] mentioned it one time, apparently Mr. Bodle had never told

her about that." (*Id.,* pp. 60, 65.)  She really "wasn't aware of what exactly the

charges were [against Bodle] and what he was alleged to have done." (*Id.*, 60.)

(*Id.*, p. 65.)  Based on this information, the Superior Court held that counsel "had a

reasonable strategic basis for electing not to call Weigle and [Karen] Bodle on

appellant's behalf." (*Id*.)  The Superior Court found that Bodle "failed to

demonstrate a reasonable probability that the outcome of his trial would have been

different had either of these proffered character witnesses testified." (*Id*.)

Based on a review of the foregoing facts, it is apparent that the state courts reasonably determined that trial counsel had a reasonable basis for not calling either of these witnesses.  It is well settled that strategic choices made after investigation of law and facts relevant to plausible trial options are virtually unchallengeable.  Trial counsel's decision not to subpoena a witness must be directly assessed for reasonableness in all circumstances, applying substantial deference to counsel's judgment.  *Strickland*, 466 U.S. at 690–91.  Accordingly, under the tenets of *Strickland*, where trial counsel had met with both Weigle and Karen Bodle before trial and measured their ability to provide character evidence, but found them wanting, this claim will be dismissed.

Bodle has not met his burden to show that his counsel was constitutionally ineffective or that he was prejudiced by trial counsel's decision not to call these witnesses.  The state court's opinion dismissing this claim as meritless is neither contrary to nor an unreasonable application of federal law.  Bodle cannot meet the prejudice prong of the *Strickland* standard given the overwhelming evidence of his guilt presented at trial and based on his own admissions.  He cannot demonstrate that but for his counsel's failure to call Weigle and Karen Bodle to testify as character witnesses in his case, he would have not been convicted based on the state court record.  Accordingly, this claim is without merit and will be dismissed.

No fair-minded jurist could disagree on the correctness of the state court's decision on this claim.

### 2. Trial Court Did Not Err when Denying Bodle's Request for a Mistrial

Bodle claims the trial court erred in denying his motion for mistrial after it was discovered that DA Osokow, who had sat in the courtroom as an observer in his trial, was later seated as a juror in a civil matter, resulting in him sharing the jury lounge with Bodle's jurors.  (Doc. 1, p. 28; Doc. 19, pp. 12–13.)  This claim was raised on direct appeal.  The Superior Court adopted the trial court's Rule 1925(a) Opinion and affirmed Bodle's judgment of sentence.  (Doc. 17–2, pp. 1–4, pp. 7–24.)

Pursuant to Supreme Court precedent, trial judges have broad discretion in deciding whether to grant a mistrial, and "may declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a 'manifest necessity' for doing so, [ ] but the power ought to be with the greatest caution, under urgent circumstances, and for very plain and obvious causes."  *Renico v. Lett*, 559 U.S. 766, 773–74 (2010).

Here, the Pennsylvania standard relied on by the trial court holds that "whether to grant the extreme remedy of a mistrial is a matter falling into the discretion of the trial court.  'A trial court need only grant a mistrial where the

alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial.'" *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.3d 75, 94 (2004), quoting *Commonwealth v. Jones*, 542 Pa. 464, 688 A.3d 491, 503 (1995). (Doc. 17–2, p. 16.)  Because this standard mirrors the standard articulated in *Renico*, *supra*, the court concludes that the trial court's decision, adopted by the Superior Court, was not contrary to clearly established federal law.  *See Williams*, 529 U.S. at 406 ("[A] run–of–the–mill state–court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

As for the "the unreasonable application" prong of § 2254(d)(1), "[t]he question is not whether the trial judge should have declared a mistrial.  It is not even whether it was abuse of discretion for her to have done so … The question under AEDPA is instead whether the determination of the [state court] that there was no abuse of discretion was an 'unreasonable application of … clearly established law.'" *Renico*, 559 U.S. at 772–73.

While very displeased with the events, the trial court stated:

> the issue on a mistrial is whether Mr. Bodle's right to a fair trial was somehow compromised by what has happened. And I don't think, at least at this stage, that that's been shown to me.

54

(Doc. 17–4, p. 11.)  No evidence was presented to the trial court that the jurors in Bodle's case knew who DA Osokow was or had any contact with him.  There was no reported contact between DA Osokow and the prosecuting attorney, Ms. Kilgus, in the presence of the jury.  Finally, given the opportunity to *voir dire* the jury or tipstaffs on the issue, defense counsel declined.  Based on the lack of any evidence of any prejudicial impact on Bodle due to DA Osokow's presence at Bodle's trial, or presence in the jury room as a juror in another case, the trial court did not abuse its discretion in denying defense counsel's request for a mistrial.

Based on the foregoing discussion, the court concludes that in denying Bodle's request for a mistrial, the state court decision reasonable applied applicable Supreme Court precedent.  The trial court's decision also constitutes a reasonable determination of the facts in the light of the uncontested evidence presented.  Bodle is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, Bodle's petition for writ of habeas corpus is denied as his claims are non–cognizable, procedurally defaulted, or lacking in merit under the appropriate standard of review.  A certificate of appealability will not issue with respect to any claim, as reasonable jurists would not debate the court's procedural or substantive disposition of Bodle's claims.

The denial of a certificate of appealability does not prevent Bodle from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b)(1).

An appropriate order will issue.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  February 1, 2021